**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| Atosha Williams, Terry Gasche, Kirsten Halcomb, Jacquelyn Jackson, Michael Moore, Coner Reed, and Matthew Shutt, Sr.,<br><br>            Plaintiffs,<br>   v.<br><br>Capital One Bank (USA) N.A.,<br><br>            Defendant. | Civil Action No.: <u>4:18-cv-52</u><br><br><br><br><br>**COMPLAINT** |

For this Complaint, Plaintiffs, Atosha Williams, Terry Gasche, Kirsten Halcomb, Jacquelyn Jackson, Michael Moore, Coner Reed, and Matthew Shutt, Sr., by undersigned counsel, state as follows:

## JURISDICTION

1.  This action arises out of Defendant Capital One Bank (USA) N.A.'s ("Defendant" or "Capital One") repeated violations of the Telephone Consumer Protection Act 47 U.S.C. § 227, *et seq.* (the "TCPA").

2.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

## PARTIES

3.  Plaintiff Atosha Williams ("Williams") is an adult individual residing in Fort Worth, Texas, and is a "person" as defined by 47 U.S.C. § 153(39).

4.  Plaintiff Terry Gasche ("Gasche") is an adult individual residing in Savannah, Georgia, and is a "person" as the term is defined by 47 U.S.C. § 153(39).

5. Plaintiff Kirsten Halcomb ("Halcomb") is an adult individual residing in Lexington, Kentucky, and is a "person" as defined by 47 U.S.C. § 153(39).

6. Plaintiff Jacquelyn Jackson ("Jackson") is an adult individual residing in Pompano Beach, Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

7. Plaintiff Michael Moore ("Moore") is an adult individual residing in Lisbon, Iowa, and is a "person" as defined by 47 U.S.C. § 153(39).

8. Plaintiff Coner Reed ("Reed") is an adult individual residing in Townsend, Georgia, and is a "person" as defined by 47 U.S.C. § 153(39).

9. Plaintiff Matthew Shutt, Sr. ("Shutt") is an adult individual residing in Locust, North Carolina, and is a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is a Virginia business entity with an address of 1680 Capital One Drive, McLean, Virginia 22102-3491, and is a "person" as defined by 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS APPLICABLE TO ATOSHA WILLIAMS

11. Within the last year, Capital One began placing calls to Williams's cellular telephone, number 479-xxx-4696, using an automatic telephone dialing system ("ATDS").

12. When Williams answered calls from Capital One, she heard a period of silence and had to wait on the line to be connected to the next available representative.

13. On or about August 12, 2016, Williams spoke with a live representative and requested that all calls to her cease.

14. Nonetheless, Capital One continued to place automated calls to Williams's cellular telephone number.

## ALLEGATIONS APPLICABLE TO TERRY GASCHE

15. Within the last four years, Capital One called Gasche's cellular telephone number, 419-xxx-6140, with an automatic telephone dialer system ("ATDS").

16. When Gasche answered the calls from Capital One, he was met with a period of silence prior to being connected to a live agent.

17. On or about May 1, 2015, Gasche spoke to Capital One and requested that Capital One cease calling his cellular telephone.

18. Nonetheless, Capital One continued calling to place automated calls to Gasche's cellular number.

## ALLEGATIONS APPLICABLE TO KIRSTEN HALCOMB

19. Within the last four years, Capital One called Halcomb's cellular telephone, number 859-xxx-0263, using an automatic telephone dialing system ("ATDS") and using an artificial or prerecorded voice.

20. On several occasions, Capital One left Halcomb prerecorded voicemail messages on Halcomb's cellular telephone instructing her to return its call.

21. In or around August 2016, Halcomb answered one of Capital One's calls and asked it to stop calling her directly and to instead direct any inquiries to her debt consolidation program.

22. Nonetheless, Capital One continued to place automated calls to Halcomb's cellular telephone.

## ALLEGATIONS APPLICABLE TO JACQUELYN JACKSON

23. In or around June 2016, Capital One began placing calls to Jackson's cellular telephone, number 754-xxx-2247, in an attempt to contact Jackson's father.

24. Capital One placed calls to Jackson's cellular telephone using an automatic telephone dialing system ("ATDS").

25. When Jackson answered calls from Capital One, she heard a period of silence and had to wait on the line to be connected to the next available representative.

26. In or around September 2016, Jackson spoke with a live representative, provided Capital One with her father's telephone number and requested that all calls to her cease.

27. Nonetheless, Capital One continued to place automated calls to Jackson.

## ALLEGATIONS APPLICABLE TO MICHAEL MOORE

28. On or about 2016, Capital One started calling Moore's cellular telephone, number 515-xxx-2312.

29. At all times mentioned herein, Capital One contacted Moore using an automated telephone dialer system ("ATDS") and/or by using an artificial or prerecorded voice.

30. When Moore answered Capital One's calls, he heard a prerecorded message instructing him to hold for the next available representative.

31. During a live conversation in or around September 9, 2016, Moore requested that all calls to him cease.

32. Nonetheless, Capital One continued placing automated calls to Moore's cellular telephone.

## ALLEGATIONS APPLICABLE TO CONER REED

33. In or around June 2017, Capital One began placing calls to Reed's cellular telephone, number 386-xxx-0432 using an automatic telephone dialing system ("ATDS").

34. When Reed answered calls from Capital One, he heard a dial tone and had to wait on the line for a period of time before being connected to a live representative.

35. On or about July 4, 2017, Reed spoke with a live Capital One representative and requested that Capital cease calling him.

36. Nonetheless, Capital One continued to place automated calls to Reed.

## ALLEGATIONS APPLICABLE TO MATTHEW SHUTT, SR.

37. Within the last two years, Capital One began placing calls to Shutt's cellular telephone, number 980-xxx-2214, in an attempt to contact his son.

38. Capital One placed calls to Shutt's cellular telephone using an automatic telephone dialing system ("ATDS").

39. When Shutt answered calls from Capital One, he heard a period of silence and had to wait on the line to be connected to the next available representative.

40. In or around December 2016, Shutt informed Capital One that his son was in the United States Army and currently deployed with limited communication, and asked Capital to cease calling his cellular telephone number.

41. Shutt reiterated his request for the calls to stop on multiple occasions.

42. Nonetheless, Capital One continued to place automated calls to Shutt's cellular telephone number.

## COUNT I

## VIOLATIONS OF THE TCPA – 47 U.S.C. § 227, ET SEQ. AS TO PLAINTIFFS

43. At all times mentioned herein, Defendant called Plaintiffs' cellular telephone number using a predictive dialer, which constitutes an ATDS under the TCPA.

44. In expanding on the prohibitions of the TCPA, the Federal Communications Commission ("FCC") defines a predictive dialer as "a dialing system that automatically dials consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer

the phone and a [representative] will be available to take the call…" 2003 TCPA Order, 18 FCC 36 Rcd 14022. The FCC explains that if a representative is not "free to take a call that has been placed by a predictive dialer, the consumer answers the phone only to hear 'dead air' or a dial tone, causing frustration." *Id.* In addition, the TCPA places prohibitions on companies that "abandon" calls by setting "the predictive dialers to ring for a very short period of time before disconnecting the call; in such cases, the predictive dialer does not record the call as having been abandoned." *Id.*

45. As alleged, Plaintiffs each heard long periods of silence when they answered Defendant's calls or listened to Defendant's voicemail messages, which is one of the earmarks of predictive dialer use and sufficient to plead ATDS use. *See Crawford v. Target Corp.*, No. 3:14-CV-0090-B, 2014 WL 5847490, at *3 (N.D. Tex. Nov. 10, 2014) (denying motion to dismiss where plaintiff alleged that defendant "placed the calls using an . . . ATDS or predictive dialer, which she recognized because, upon answering Defendant's calls, she experienced periods of silence before hearing a live representative on the line."); *Barnes v. Santander Consumer USA, Inc.*, No. 1:14CV01941, 2015 WL 12777362, at *1 (N.D. Ohio June 15, 2015) ("Plaintiff alleges that this period of silence is indicative of an automatic dialer. These allegations provide fair notice of the claims against Defendant, and Plaintiff's TCPA claim is sufficiently pled.").

46. Defendant's predictive dialer additionally has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

47. Moreover, Defendant utilized prerecorded messages and/or artificial voices when it placed calls to Plaintiffs.

48. Further, Defendant lacked prior express consent to call Plaintiffs, and to the extent that Defendant ever had consent to contact Plaintiffs, such consent was effectively revoked after each Plaintiff explicitly asked Defendant to stop calling their respective cellular telephones.

49. Thus, for each call that Defendant placed to Plaintiffs after Plaintiffs asked it to stop calling them, Defendant was aware that it lacked consent to place the call. As such, each call placed to Plaintiff was made in knowing and/or willful violation of the TCPA, and subject to treble damages pursuant to 47 U.S.C. § 227(b)(3)(C).

50. The telephone numbers called by Defendant were and are assigned to a cellular telephone for which Plaintiffs incur charges pursuant to 47 U.S.C. § 227(b)(1).

51. Plaintiffs were each annoyed, harassed, and inconvenienced by Defendant's continued calls.

52. None of the calls from Defendant to Plaintiffs were placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

53. As a result of each call made in negligent violation of the TCPA, Plaintiffs are entitled to an award of $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B).

54. As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiffs are entitled to an award of treble damages in an amount up to $1,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendant:

1. Statutory damages of $500.00 for each violation determined to be negligent pursuant to 47 U.S.C. § 227(b)(3)(B);

2. Treble damages for each violation determined to be willful and/or knowing pursuant to 47 U.S.C. § 227(b)(3)(C); and

3. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: January 25, 2018

Respectfully submitted,

By */s/ Jenny DeFrancisco*

Jenny DeFrancisco, Esq.
CT Bar # 432383
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
E-mail: jdefrancisco@lemberglaw.com
Attorneys for Plaintiffs